Brinkerhoff, J.
It is not controverted that the office of inspector and sealer of weights and measures for the city of Cincinnati, has been legally created by virtue of the laws of the State and certain ordinances of the city passed in pursuance thereof, nor that the acceptance of his official bond is a necessary qualification to entitle him to enter upon his official duties.
Prior to the passage of the act of March 5, 1860, “ relating to cities of the first class, having a population exceeding eighty thousand inhabitants,” (2 Swan and Critchfield’s stat. 1557), the appointment of this office was vested in the city council. But, by the twelfth section of that act, it is provided, that.
“ The city council of such city shall make no contracts, nor authorize any to be made subject to their approval, nor shall they exercise any appointing or approving power; hut the appointment of officers, and filling vacancies in office, and the making of contracts, shall he provided for hy ordinance.”
This wise statutory prohibition was, doubtless, intended, as it is certainly well calculated, to relieve the municipal legislature from the distracting and corrupting influences almost necessarily issuing from the dispensation of official and pecuniary patronage; and places the municipal legislature, in respect to the appointing power, in a position substantially similar to that in which the general assembly of the State is placed, by the constitution of the State.
-Accordingly, in pursuance of this section of the -statute, the city council, on the 24th day of October 1860, passed the following ordinance, “ to provide for the appointment of inspectors of flour and provisions, and inspector and sealer of weights and measures:”
“ Be it ordained by the city council, of the city of Cincinnati that it shall be the duty of the city solicitor of said *548 city to make all appointments of inspectors of flour and provisions, and inspector and sealer of'weights and measures, which appointments have heretofore been vested in the city council of said city — Provided, that such appointments be made from persons designated by the board of officers of the chamber of commerce. The duties of said inspectors shall be the same as shall be prescribed in the ordinances upon that subject. Done at the council chamber, in the city of Cincinnati, this 24th day of October, A. D. 1860.
John E. Torrence, President.”
Attest: Samuel L. Corwine, City Clerk.
By the allegations of the alternative writ, and the silence of the answer, it stands admitted that the relator was appointed, in all respects, in accordance with the provisions of the city ordinance on the subject, and that his bond and sureties are sufficient and unobjectionable. Why, then, is the bond not accepted ? It would be uncharitable to suppose that the refusal of the city council to accept it, is dictated by a desire to retain the “ approving power,” or, indirectly, the power to dictate an appointment, contrary to the express enactment of the general assembly of the State; and so we must look to their answer for the reason of such refusal. They say their own ordinance, regulating the' appointment of this officer, is null and void, because it requires the appointment to be made by the city solicitor, from “ persons designated by the board of officers of the chamber of commerce.”
We are wholly unable to perceive any connection, either in logic or law, between the premises and the conclusion thus announced. The chamber of commerce is a body corporate, with perpetual succession, required to have a board of officers, and whose corporate existence is in no wise dependent Upon, and whose board of officers are in no way subject to the control of, the city council (48 O. L. L. 554). And consequently it can not be said that the city council, by vesting this power of designation in such board of officers, are retaining in their own hands, indirectly, any portion of the “ appointing or approving power,” which is the thing mainly to be avoided, as *549 it is the thing against which the policy of the general assembly is principally leveled.
The board of officers of the chamber of commerce are not restricted as to the number of “ persons” whom it shall “ designate” to the city solicitor, from among whom an appointment shall be made; and the practical effect of the provision is substantially this — that the appointment shall be made from persons whose qualications and fitness the board of officers of the chamber of commerce is willing to indorse. In this we can see nothing in conflict with either the letter or spirit of the act under which the ordinance is framed; and, on the other hand, the provision itself seems to us to be a judicious and politic regulation; for the board of officers of the chamber of commerce, representing, as it probably does, the great mercantile interests of the city, will naturally feel a peculiar interest in promptly designating persons properly qualified for the duties of the office. It is possible, to be sure, that the city solicitor might persistently refuse to appoint any person designated by the board of officers of the chamber of commerce; and this might give rise to a necessity for taking •measures to remove him frpm office, or to compel him to discharge his duty; or the board of officers might neglect or refuse to designate any persons for appointment, and thus render a modification of the ordinance necessary; but, be this as it may, the objection is one which goes to the policy, and not to the validity, of the ordinance.
If the bond tendered for the acceptance of the city council was defective in form or amount; if the sureties were insufficient, or otherwise, for good cause, objectionable, they might well refuse to accept it; but, as nothing of this kind is alleged, it seems to us that the city council have no discretion left them, and must accept the bond.

Peremptory mandamus awarded.

Scott, C.J., and Sutliff and Gholson, JJ., concurred.
Peck, J., having been absent when this case was considered, did not participate in its determination.